IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ANN BILLINGSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:11-cv-521-MHT |
| | ) | [wo] |
| CENTAUR BUILDING SERVICES, | ) | |
| SOUTHEAST, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law (Doc. 4, filed July 7, 2011).  Pending before the Court is Defendant Centaur Building Services Southeast, Inc.'s Motion for Summary Judgment (Doc. 16, filed March 2, 2012) and Plaintiff Ann Billingsley's Motion for Summary Judgment (Doc. 25, May 8, 2012).  The Court has carefully reviewed the Motions for Summary Judgment, the briefs filed in support of and in opposition to the motion, and the supporting and opposing evidentiary materials.  For good cause, it is the RECOMMENDATION that the defendant's Motion be GRANTED, and the plaintiff's Motion be DENIED.

### I. JURISDICTION

The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), the Age Discrimination in Employment

Act of 1967, as amended, 29 U.S.C. § 621 et seq. (the "ADEA") and under the anti-retaliation provisions of 42 U.S.C. § 2000(e), et seq. The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

## II. SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323.

The movant may meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-324. A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1).  The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial.  *Clemons v. Dougherty Cnty., Ga.*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993) ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine issue for trial."); see also FED. R. CIV. P. 56(e).  "[T]he substantive law will identify which facts are material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Ritchey v. S. Nuclear Operating Co., Inc.*, 423 Fed. Appx. 955, 958 (11th Cir. 2011) (unpublished opinion quoting Anderson).  At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511.  Only disputes about the material facts will preclude the granting of summary judgment.  *Id*.

A dispute of material fact "is 'genuine,' [] if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Id.* at 248. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n. 6 (11th Cir. 1997); *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995).

However, if there is a conflict in the evidence, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Ruiz de Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). With these principles of law in mind, the court will determine now whether summary judgment is appropriate and should be granted.

All litigants, pro se or not, must comply with the Federal Rules of Civil Procedure. Although the court is required to liberally construe a pro se litigant's pleadings, the court does not have "license to serve as de facto counsel for a party. . .or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*,

132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted), *overruled on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010); *see also Giles v. Wal-Mart Distrib. Ctr.*, 359 Fed. Appx. 91, 93 (11th Cir. 2009) (internal citations and quotations omitted) ("Although pro se pleadings are held to a less strict standard than pleadings filed by lawyers and thus are construed liberally, this liberal construction does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action.").

"Speculation does not create a genuine issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted) (emphasis in original).  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50, 106 S.Ct. at 2510-11 (citations omitted).  In short, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case.  *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

### III. BACKGROUND

On June 30, 2011, Ann Billingsley ("Plaintiff" or "Billingsley"), acting *pro se*, brought this action against Centaur Building Services Southeast, Inc., ("Defendant" or "Centaur") alleging violations of the Age Discrimination in Employment Act ("ADEA") and the Anti-Retaliation Discrimination in Employment Act.

Plaintiff began working for Centaur in October, 2009, as a general cleaner on the

Auburn University campus.  Pl. Dep. 26:9-19.  At the time of her hiring Plaintiff was 57 years old.  Pl. Dep. 26:20-22.  Plaintiff was supervised by several individuals, one of whom was Wassil Rosman, ("Rosman"), a Project Manager.  Pl. Dep. 28:13-24.  On March 19, 2010, Rosman approached Billingsley and said, "Old lady, that's not how you wash down a wall."  Pl. Dep. 53:4-21.  Billingsley also overheard Rosman tell another employee, "That old lady had surgery and she can clean better than you can."  Pl. Dep. 53:22-54:2.  Billingsley also overheard Rosman refer to her as "that" while speaking with another Centaur employee.  Pl. Dep. 95:3-21.  Additionally, Emily Penn ("Penn"), Rosman's assistant, repeatedly failed to call Billingsley by her name and instead referred to her as "Miss."  Pl. Dep. 94:8-19.

Billingsley filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 9, 2010, due to these comments.  *See* Doc. 18, Ex. A at 84.  Subsequently, on September 17, 2010, Rosman assigned Billingsley extra work that she was required to complete during the same shift.  Pl. Dep. 85:15-20.  Rosman had promised to send help to complete the extra work, but help was never sent leaving Billingsley and Carlina Tate ("Tate") to complete the list of extra work.  Pl. Dep. 86:10-25, 87:1-11.  Due to the additional pressure put on Billingsey after filing her EEOC charge, she filed a Supplemental EEOC Charge.  *See* Doc. 18, Ex. A at 87.

Billingsley  resigned her employment, without prior notice, on September 28,

2010.  Pl. Dep. 51:22-23, 52:1-8.  Plaintiff began her new employment at East Alabama

Mental Health Center ("EAMHC") on September 30, 2010, to which she applied on

August 25, 2010.  Pl. Dep. 12:21-25, 13:1-20.

## IV. DISCUSSION AND ANALYSIS

### A. Timeliness

Defendant argues that Plaintiff's Response is untimely and should not be considered.

*See* Doc. 33 at 3.  Upon Defendant's filing of its motion for summary judgment, the Court

ordered the Plaintiff to respond by March 23, 2012.  *See* Doc. 19, filed March 15, 2012.

Plaintiff failed to file any documents until May, 8, 2012.  *See* Docs. 25-27.  The Court

accepted Plaintiff's submission and construed it as both a response to Defendant's Motion

for Summary Judgment and as an independent Motion for Summary Judgment against

Centaur.  *See* Doc. 30.  Defendant argues that because Plaintiff's submission was filed after

both the dispositive motions deadline of March 2, 2012, as well as the response deadline of

March 23, 2012, the Court should dismiss the filings as untimely.  *See* Doc 33 at 3-4.

Although Defendant's argument concerning the untimeliness of Plaintiff's submission

is accurate, the Court accepted Plaintiff's Motion for Summary Judgment and Response in

spite of these deadlines for good cause.  An inadvertent clerical error left the Plaintiff

insufficient time to file a Response to Defendant's Motion for Summary Judgment.[1]  *See*

---

[1] The Order re Motion for Summary Judgment was issued on March 15, 2012 which set a
deadline for any responsive pleadings to be submitted by March 23, 2012, allowing only eight (8) days to
file a Response to Defendant's Motion for Summary Judgment.  *See* Doc. 19.

FED. R. CIV. P. 56 (2012) (Committee Notes on Rules - 2009 Amendment) ("If a motion for summary judgment is filed before a responsive pleading is due from a party affected by the motion, the time for responding to the motion is 21 days after the responsive pleading is due"). As such, Plaintiff was due a twenty-one (21) day period to file any responsive pleadings, and the Court accepts Plaintiff's submissions.

## B. Claims Not Before the Court

Defendant argues that Plaintiff raises new claims of sexual harassment and race discrimination in her responsive pleadings that were not raised in her Complaint. *See* Doc. 33 at 4. Plaintiff does not list as enumerated claims or brief the issues concerning sexual harassment or racial discrimination in her Complaint. *See* Doc. 1. The Court finds Defendant's argument to be based on a misinterpretation of the Plaintiff's pleadings. During the Plaintiff's deposition, she concedes that she did not assert a claim of sexual harassment against Defendant. Pl. Dep. 124:15-21. Plaintiff's pleadings make clear that Plaintiff only mentions the sexual harassment issue to counter Defendant's argument that she "failed to afford Centaur any opportunity to address the conduct about which she now complains" by asserting her lack of faith in the procedures Centaur has in place for enforcing its policies. *See* Docs. 17 at 17, 26 at 2-3. Likewise, Plaintiff also concedes that she did not assert a claim for racial discrimination against Defendant, and it is clear that her references to racial discrimination are only to support her claims surrounding the type of work environment at Centaur. Pl. Dep. 110:14-25, 111:1-12; *see* Doc. 26 at 4-5.

**C. Age Discrimination & Hostile Work Environment**

Defendant asserts that a claim of hostile work environment is not cognizable under the ADEA in this Circuit, and even if such a claim were to exist, the Plaintiff fails to demonstrate a genuine dispute of material fact. *See* Doc. 17 at 9-11. Plaintiff asserts that she was discriminated against based on her age in violation of the ADEA. *See* Doc. 1 at 5. Bilingsley alleges that the following incidents occured:

- On March 19, 2010, Rosman told her "Old lady, that's not how you wash down a wall." Pl. Dep. 53:4-21.

- On March 19, 2010, Billingsley overheard Rosman tell another employee "That old lady had surgery and she can clean better than you can," referring to Billingsley. Pl. Dep. 53:22-54:2.

- Emily Penn, on several occasions, referred to Billingsley as "Miss." Pl. Dep. 94:5-9.

The defendant correctly notes that the Eleventh Circuit has not directly discussed whether hostile work environment is cognizable under the ADEA. *EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1249 n.7 (11th Cir. 1997). Circuit courts are split on the issue; for example, the First Circuit has held that a hostile work environment claim is not cognizable under the ADEA, while the Fifth and Sixth Circuits have found that it is

cognizable.[2] *Compare Collazo v. Nicholson*, 535 F.3d 41, 44 (1st Cir. 2008), *with Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011), *and Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834–35 (6th Cir.1996).[3]   It is unnecessary for the Court to grapple with whether a hostile work environment claim is viable under the ADEA because even assuming *arguendo* that such a claim exists, the plaintiff fails to demonstrate a genuine dispute of material fact.

The Eleventh Circuit has held that "to establish a hostile work environment claim [Plaintiff must] show: (1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability. *Miller v. Kenworth*

---

[2] Similar to the Eleventh Circuit, the Seventh and Ninth Circuits have taken cases on appeal that involve a hostile work environment claim under the ADEA; however, they disposed of the matter on other grounds without reaching the question of whether the claim was viable or assumed *arguendo* that a claim existed.  *See i.e. Sischo–Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1109 (9th Cir.1991); *Young v. Will Cty. Dep't of Pub. Aid*, 882 F.2d 290, 294 (7th Cir.1989).

[3] The Fifth and Sixth Circuits chose to allow the hostile work environment claim under the ADEA becuase the U.S. Supreme Court has held that "[t]he relevant language in the two statutes is identical, and we have long recognized that our interpretations of Title VII's language apply 'with equal force in the context of age discrimination, for the substantive provisions of the ADEA 'were derived *in haec verba* from Title VII.'"  *Gross v. FBL Fin. Services, Inc.*, 557 U.S. 167, 183, 129 S. Ct. 2343, 2354, 174 L. Ed. 2d 119 (2009) (citing *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (quoting *Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978))).

*of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

Applying the *Miller* factors to the totality of events in this case, the Court concludes that Billingsley fails to establish a *prima facie* case of hostile work environment because the record contains no evidence that the alleged conduct "was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment." *Miller*, 277 F.3d at 1275.  The Supreme Court directs courts "to determine whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88, 118 S. Ct. 2275, 2283, 141 L. Ed. 2d 662 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 371, 126 L. Ed. 2d 295 (1993)); *see also Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999).  The Supreme Court defines this requirement to contain both an objective and a subjective component.  *Miller*, 277 F.3d at 1276.  To properly assert a claim, the harassing behavior must result in an environment "that a reasonable person would find hostile or abusive" as well as an environment that the victim "subjectively perceive[s] ... to be abusive." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22, 114 S. Ct. 367, 370-71, 126 L. Ed. 2d 295 (1993)).

The effect of any alleged harassment in Billingsley's environment was minimal at best.  While Plaintiff may rightly take offense to being called "old lady" and "Miss," she fails

to establish that the alleged comments were severe, pervasive, and objectively abusive.  As an example of Plaintiff's failure to satisfy the objective component, the term "Miss" is defined as a "young lady —used without a name as a conventional term of address to a young woman" and "a young unmarried woman or girl."  *Miss*, Merriam-Websters Dictionary, http://www.merriam-webster.com/dictionary/miss (last visited Aug. 30, 2012).  Although Plaintiff states she is offended by the use of the term "Miss," by definition it completely refutes any age inappropriate connotation.  Accepting the March 19, 2010 occurrences as true, Plaintiff clearly fails to establish that being referred to as "old lady" twice in a single day with no subsequent comments could establish the severity, pervasiveness, or abusiveness necessary to establish a claim for hostile work environment based on age discrimination.

Courts have held that "the ADEA does not guarantee employees a stress-free working environment."  *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1233 (11th Cir. 2001).  In addition, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment" and the courts seek to filter out complaints of "sporadic use of abusive language, gender-related jokes, and occasional teasing."  *Faragher*, 524 U.S. at 788, 118 S.Ct. at 2283-84.  The Court recognizes that Rosman's comments were understandably offensive to Plaintiff; however, the few comments made by Rosman simply do not rise to the level required to establish a cause of action for a hostile work environment due to age

discrimination.[4]  The Court finds that the Plaintiff has failed to demonstrate a genuine dispute of material fact; therefore, Defendant's Motion for Summary Judgment on the hostile work environment claim is due to be granted.

## D. Retaliation & Constructive Discharge

The anti-retaliation provision in Title VII forbids an employer from discriminating against an employee because that individual "opposed any practice made an unlawful employment practice" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing."  42 U.S.C. § 2000e–3(a).  To establish a *prima facie* case of retaliation, a plaintiff must present evidence that (1) she engaged in statutorily protected expression, (2) the employer took action that would have been materially adverse to a reasonable employee, and (3) there was some causal relation between the two events. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001).  The employee must show that the employer "intentionally rendered her working conditions so difficult, unpleasant, or intolerable that she was compelled to quit because a reasonable person in her shoes would have felt compelled to resign."  *Poole v. Country Club, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997); *see also Kilgore v. Thompson & Brock Mgmt.*, 93 F.3d 752, 754 (11th Cir. 1996) (stating "[t]o prove constructive discharge, the employees must demonstrate that their working conditions were so intolerable that a reasonable person in their position would be

---

[4] *See Hipp*, 252 F.3d at 1233 (citing *Faragher*, 524 U.S. at 788; 118 S.Ct. at 2283) ("While the conduct Plaintiff allegedly experienced may be inappropriate in a working environment and may have been unjustified, neither Title VII nor the ADEA operate as 'general civility code[s]' that ensure a workplace free of stress or criticism, justified or not.").

compelled to resign."); *Morgan v. Ford*, 6 F.3d 750, 755 (11th Cir. 1993); *Steele v. Offshore Shipbuilding, Inc*., 867 F.2d 1311,1317 (11th Cir. 1989); *Buckley v. Hospital Corp. of America, Inc*., 758 F.2d 1525, 1530 (11th Cir. 1985).

Here, Plaintiff filed an EEOC charge on September 9, 2010, alleging age discrimination under the ADEA. *See* Doc. 18, Ex. A at 84. Plaintiff alleges in her complaint that as a result of the pending EEOC charge Centaur retaliated against her by assigning her extra work in violation of Title VII's anti-retaliation provisions. *See* Doc. 1 at 4. Plaintiff alleges that Centaur's actions caused her to resign in a manner that amounts to a constructive discharge. *Id.* However, in her deposition Plaintiff concedes that Centaur did not take any negative actions against her based on her complaints about harassment or discrimination. Pl. Dep. 137:17-25, 138:1-8. In fact, Plaintiff states Defendant never even mentioned the EEOC charge, nor does she know if they even received it. Pl. Dep. 84:3-23.

Since Plaintiff made the allegation in both her Complaint (Doc.1) and again in her Response to Defendant's Motion for Summary Judgment (Doc. 26), the Court will liberally construe all allegations made by Plaintiff. Plaintiff alleges that upon filing her EEOC charge, the Defendants began inappropriate retaliatory practices against her which required her to resign in order to "maintain her mental health and sanity amidst the onslaught of the pressure put on her." *See* Doc. 1 at 4; *see also* Doc. 26 at 13. Applying the *Pennington* factors to the events in this case, the Court concludes that Billingsley has not established a genuine dispute of material fact regarding whether the "employer took action that would have been materially

adverse to a reasonable employee." *Pennington*, 261 F.3d at 1266.  Plaintiff alleges the following action occurred:

- On September 17, 2010, Billingsley and Tate were given a letter that included a list with extra work that had to be completed on top of their normal duties. Pl. Dep. 87:12-25.

On September 14, 2010, QC (the quality assurance team) inspected the Research Park building.  Pl. Dep. 89:8-18.  Plaintiff is unsure if Rosman accompanied QC on the walkthrough.  Pl. Dep. 90:17-20.  After the walkthrough on September 17, 2010, Rosman issued a letter to Plaintiff's supervisor Debbie Chambley with a list of tasks to be completed that was brought to Rosman's attention after the inspection.  Pl. Dep. 88:1-9, 90:12-16.  The list was given to Plaintiff and another co-worker with the instructions to finish the task between the two of them, and Plaintiff admits they worked as a team.  Pl. Dep. 88:21-25, 89:1-4.  Plaintiff stated that all of the tasks contained in the list were completed that same day within their normal working hours.  Pl. Dep. 89:5-7, 91:8-11.  Plaintiff asserts that Rosman promised to provide additional help to complete the tasks, but ultimately they never received any further assistance.  Pl. Dep. 86:10-10-25, 87:1-11.  Plaintiff feels that without the extra help she was put under a lot of pressure to complete the assigned tasks.  Pl. Dep. 12-25. Additionally, Plaintiff claims that although she and Tate worked together to complete all of the tasks that day, Plaintiff was treated differently with respect to the extra work than was Tate.  Pl. Dep. 91:18-21.  However, all that Plaintiff asserts is that she completed more of the

tasks because she took more initiative than Tate, and admits no one asked her to do more work than Tate.  Pl. Dep. 91:22-25, 92:1-25, 93:1-5.  Plaintiff asserts that this extra work was upsetting and caused her to issue her resignation after her shift on September 28, 2010.  Pl. Dep. 91:12-17.

On top of her admission that Defendant did not take any negative action against her as a result of her filing an EEOC charge, there are other telling signs that this claim is without merit.  Plaintiff alleges that she was constructively discharged as a result of the extra work assigned on September 17, 2010; however, Plaintiff did not resign until the end of her shift on September 28, 2010, eleven days later.  Pl. Dep. 99:2-4.  Additionally, Plaintiff applied for a position at EAMHC on August 25, 2010, which is about three weeks prior to the incident that allegedly forced her out of her employment.  *See* Doc. 18, Ex. A at 41-46.  Only two days after her resignation, Plaintiff began her new employment for a higher rate of pay at EAMHC.  Pl. Dep. 13:5-9, 15: 1-2, 27:14-19.

All that Plaintiff has been able to establish is that she was required to do more tasks on September 17, 2010 than she normally would be required to do, and that she did more of the work than her co-worker because she is a better worker.  Clearly, in the light most favorable to Plaintiff the facts do not rise to the level of a retaliatory action that resulted in a constructive discharge by "intentionally render[ing] her working conditions so difficult, unpleasant, or intolerable that she was compelled to quit because a reasonable person in her shoes would have felt compelled to resign."  *Poole*, 129 F.3d at 553.  The Court finds that

Plaintiff fails to demonstrate a genuine dispute of material fact; therefore, the Defendant's Motion for Summary Judgment on the retaliation and constructive discharge claim is due to be granted.

### V. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that

(1)     The Defendants' Motion for Summary Judgment (Doc. 16) be GRANTED.

(2)     The Plaintiff's Motion for Summary Judgment (Doc. 25) be DENIED.

(3)     The Plaintiff's claims against Centaur Building Services Southeast, Inc. be dismissed with prejudice.

(4)     Any outstanding motions be DENIED as moot.

It is further ORDERED that the parties file any objections to this  Recommendation on or before **September 20, 2012.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain

error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

      Done this the 6th day of September, 2012.

                  /s/ Terry F. Moorer
                  TERRY F. MOORER
                  UNITED STATES MAGISTRATE JUDGE